# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DAVE WHEATON,

        **Plaintiff,**

-vs-                               **Case No.  6:06-cv-01197-Orl-28UAM**

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Plaintiff Dave Wheaton ["Wheaton"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying Wheaton's application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405 (g).

## I.    PROCEDURAL HISTORY

      On March 8, 2004, Wheaton filed a claim for disability insurance benefits and a period of disability, claiming disability as of March 18, 2004. R. 106, 107-09. On November 17, 2005, the Honorable John D. Thompson, Jr., Administrative Law Judge ["ALJ"], held a hearing on Wheaton's claim in Daytona Beach, Florida. R. 21-73. Attorney Richard Zasada represented Wheaton at the hearing. R. 21. The ALJ heard testimony from Wheaton and vocational expert Paul Dolan, MA ("VE"). R. 13.

On February 10, 2006, the ALJ issued a decision that Wheaton was not disabled and not entitled to benefits. R. 13-20. Following a review of the medical and other record evidence, the ALJ found that Wheaton could perform his past relevant work. R. 19, Finding 8. The ALJ determined that Wheaton "retains the ability to lift and/or carry and push/pull 20 pounds occasionally and 10 pounds or less more frequently. He can walk and/or stand for approximately six hours out of an eight-hour day and sit for approximately six hours out of an eight-hour day." R. 18. The ALJ found that Wheaton's past work as bartender was within his residual functional capacity ("RFC"). R. 19, Finding 7. The ALJ concluded that Wheaton was not disabled. R. 19, Finding 9.

On June 6, 2006, the Appeals Council denied review. R. 5-7. On August 10, 2006, Wheaton timely appealed the Appeals Council's decision to the United States District Court. Docket No. 1. On July 11, 2007, Wheaton filed in this Court a memorandum of law in support of his appeal. Docket No. 26. On September 24, 2007, the Commissioner filed a memorandum in support of his decision that Wheaton was not disabled. Docket No. 29. The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Wheaton assigns several errors to the Commissioner. First, Wheaton claims the ALJ failed to incorporate any upper extremity limitations into Wheaton's RFC. Second, Wheaton claims that the ALJ erred in failing to articulate good cause for rejecting the treating physician opinion of Dr. Ibrahim. Third, Wheaton contends that the ALJ made a factual error when he concluded that Wheaton's cervical spine condition resolved after the cervical diskectomy and anterior interbody graft fusion were performed. The Commissioner argues that substantial evidence supports his decision and the decision should be affirmed.

III.   **THE STANDARD OF REVIEW**

   A.   **AFFIRMANCE**

   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

   B.   **REVERSAL**

   Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).    The district court will reverse a

-3-

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

## C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material —  relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

-5-

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1]  *Id.*

## V.  APPLICATION AND ANALYSIS

### A.    THE FACTS

Wheaton was 48 years of age on the date of the ALJ's decision. R. 14, 24. He has a high school education and past work experience as a truck driver, bartender, maintenance worker and a forklift driver. *Id.*

Wheaton has a history of degenerative disc disease of the lumbar and cervical spine, status post lumbar fusion, arthritis, chronic obstructive pulmonary disease and diabetes mellitus. R. 15. He was involved in a car accident in 1992 from which he maintains his various back problems stem. R. 34. Wheaton has complained of chest tightness and suffers from hypertension. R. 195-197. On October 23, 2001, lumbar spine x-rays revealed asymmetrical sacralization[2] of a transitional lumbosacral segment and aortic atherosclerosis, but no fractures were seen. R. 265. A report from Dr. Frank Denoff following the

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

[2] Sacralization is fusion of the sacrum and the fifth lumbar vertebra. F. A. Davis, Taber's Cyclopedic Medical Dictionary, 1830 (19th ed. 2001).

October 23rd x-rays reveals that Wheaton has degenerative disc disease at L4-L5 and L5-S1. R. 217.  Dr. Denoff noted in his report he was releasing Wheaton to full activities and did not believe Wheaton would need "any specific treatment in the near future." *Id.* On April 18, 2002, a report was issued by R.C. Banner, a radiologist, stating that the study he performed exhibited similarity to the report given in October of 2001. R. 257.   On April 26, 2002, a report rendered by Dr. Stephane Lavoie to Dr. Bruce Rankin stated that x-rays revealed increased lordosis of the lumbar spine, minor inferior endplate sclerosis and anterior spurring at L4-L5 and L5-S1. R. 212-214. Wheaton was referred for an MRI which revealed degenerative disc disease L4-L5 and improved left lumbar radiculopathy. R. 209.   Dr. Lavoie recommended that Wheaton receive a course of physical therapy after reviewing the MRI results. *Id.*

 Wheaton reported chest pain in May through July 2002.  R. 243-252.  He was diagnosed with hyperlipidemia and was started on Lipitor[3] and Niacin SR.  R. 250-252.  On June 17, 2002, he was prescribed Nitroglycerin and was referred for a stress test which was normal.  R. 246.  A cardiologist, Dr. Hecht, examined Wheaton in September 2002 due to chest pain.  R. 167.  On October 7, 2002, a cardiac catheterization study showed normal left ventricular function, normal left circumflex arteries and mild disease of the right coronary artery.  Id.

 In December 2002, Wheaton reported feeling very tired and sleepy in the daytime.  R. 186-188. He was diagnosed with sleep disordered breathing with obstructive sleep apnea highly suspect, hypertension, and coronary artery disease.  R. 188.  He was referred for a polysomnography.  *Id.* On December 6, 2002, Dr. Wahba performed a polysomnography which revealed obstructive sleep apnea of a very mild degree.  R. 186.

---

[3] Lipitor is a synthetic lipid lowering agent. R. Arky, Physicians Desk Reference, 2585 (59th ed. 2005).

Wheaton received treatment from Dr. Rankin for ongoing neck pain through February 2004.  R. 220-228.  He also continued to be treated for elevated triglycerides.  R. 225, 228.  On February 6, 2004, Wheaton underwent cervical spine x-rays that showed status post surgical fusion at C5-6, spondylosis[4] and degenerative disc changes at C6-7 with minimal neuroforaminal encroachment.  R. 220.

Dr. Lavoie treated Wheaton again in February 2004 for neck and arm pain.  R. 201-206.  Examination revealed he was slightly overweight and appeared in mild distressed. R. 203. Review of cervical spine x-rays showed a solid fusion at C5-6 and degenerative changes at C6-7 with anterior spurring and loss of disc height. *Id.* He was diagnosed with cervical spondylosis and status post cervical fusion and left cervical radiculopathy. R. 206. He was referred for an MRI of the cervical spine. R. 205-206. An MRI performed on February 23, 2004 revealed fusion of C5 and C6 vertibral bodies with minimal spondylotic disk bulges at C4-5 and C6-7 levels. R. 204. Dr. Lavoie opined Wheaton should undergo C6-7 anterior cervical diskectomy and fusion.  R. 201.

On April 1, 2004, Dr. Lavoie performed an anterior cervical diskectomy with complete neural decompression, interbody fusion at C6-7, anterior cervical instrumentation at C6-7, and anterior interbody graft with tricortical iliac crest allograft bone at C6-7 supplemented with osteofil. R. 189-194. Wheaton's postoperative diagnosis was cervical degenerative disk disease, cervical stenosis, and left cervical radiculopathy.  *Id.*  Following the operation, Dr. Lavoie reported that Wheaton was doing "rather well" and should continue to improve over time. R. 199.

Dr. Ibrahim at the Veterans Clinic treated Wheaton on September 29, 2004 for neck pain and high blood sugar.  R. 284-322.  Wheaton had been recently diagnosed with diabetes mellitus.  As of October

---

[4] Spondylosis is defined as degenerative arthritis, osteoarthritis of the spine and related tissue. Taber's at 1949.

29, 2004, through the Veterans Clinic, Wheaton was diagnosed with poorly controlled diabetes and Dr. Garcia prescribed Oxycodone[5] for his back and cervical pain.  R. 382-385.  Dr. Ibrahim's reports indicate that Wheaton was not complying with the recommended diet for his diabetes, he did not check his blood sugar regularly, he continued to smoke cigarettes, and he did not exercise consistently. R. 313-329.

On May 25, 2005, Dr. Nguyenpho, a cardiologist, examined Wheaton for chest pain.  R. 368.  Dr. Nguyenpho's report indicates Wheaton explained having intermittent symptoms with a frequency of two to three episodes a week although a stress echo was administrated in 2003 and was negative. *Id.*  The episodes usually occurred with rest and would last five to ten minutes with spontaneous resolution and he would rarely have to take a Nitroglycerin for relief. *Id.*  Examination revealed his blood pressure was elevated at 156/94.  Wheaton was referred for a thallium test.  *Id.*

A lumbar spine x-ray was performed on April 21, 2005 that indicated the vertebral body heights and disc spaces were in tact, the normal lordotic curve was preserved, the posterior elements including the pedicles appeared unremarkable, except there appeared to be a spina bifida occulta[6] of L5.  Tr. 336. The following day, Wheaton was examined by Dr. Finnegan, an orthopedist.  R. 355-361.  Examination revealed lumbar hyperlordosis and tenderness at L3. *Id.*  He was diagnosed with residual neck pain and loss of motion, chronic low back pain probably secondary to degenerative disc disease with possible spondylosis.  *Id.*

In May 2005, Wheaton was reevaluated in the diabetic clinic at the Veterans Clinic.  R. 352-355. He was instructed to start on Insulin 70/30 and continue on Glyburide and Metfomin.  R. 352-355.

---

[5] Oxycodone is an opioid analgesic for moderate to severe pain. PDR at 2818.

[6] Spina bifida occulta is a failure of the vertebra to close without hernial protrusion. Taber's at 1938.

On August 16, 2005, Dr. Ibrahim completed an Attending Physician's Statement. R. 309.  Dr. Ibrahim's report indicates Wheaton suffered from degenerative disc disease of the cervical spine and peripheral neuropathy. *Id.* The contributory cause of disability was hypertension, diabetes mellitus, chronic obstructive pulmonary disease, hyperlipidemia, and tobacco use disorder. *Id.* Wheaton was ambulatory and had been treated from September 29, 2004 through April 6, 2005. *Id.* Dr. Ibrahim opined that Wheaton was totally disabled and had not reached maximum medical improvement. R. 309.

On an illegible date that appears to be in 2005, Dr. Coady, a Staff Physician at the Veterans Clinic, wrote a letter regarding Wheaton's condition. R. 404.  Dr. Coady opined that his conditions resulted in chronic neck and back pain and his pain was exacerbated by physical activity. *Id.* Dr. Coady recommended that Wheaton avoid bending, lifting greater than ten pounds, pushing, pulling and prolonged sitting or standing. *Id.*

## B.      THE ANALYSIS

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her

-10-

from doing other work that exists in the national economy, then claimant is disabled.   20 C.F.R. §
404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the
ALJ must consider the combined effect of all of the claimant's impairments, and must consider any
medically severe combination of impairments throughout the disability determination process.  42 U.S.C.
§ 423(d)(2)(B).   The ALJ must evaluate a disability claimant as a whole person, and not in the abstract
as having several hypothetical and isolated illnesses.   *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.
1993).   Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all
alleged impairments, both individually and in combination, and must make specific and well-articulated
findings as to the effect of a combination of impairments when determining whether an individual is
disabled.   *See Jamison v. Bowen*, 814 F.2d 585, 588 - 89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.   A
remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to
consider properly.   *Vega v. Comm'r*, 265 F.2d 1214, 1219 (11th Cir. 2001).

The claimant has the burden of proving the existence of a disability as defined by the Social
Security Act.   *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).   If the claimant is unable to
establish an impairment that meets the Listings, the claimant must prove an inability to perform the
claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).   In this step, the ALJ
assesses the claimant's residual functional capacity ["RFC"].   This assessment measures whether a
claimant can perform past relevant work despite his or her impairment.   20 C.F.R. § 404.1520 (f); *see
also, Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   The ALJ makes this determination by
considering the claimant's ability to lift weight, sit, stand, push, and pull.   *See* 20 C.F.R. § 404.1545(b).

-11-

The ALJ first considers whether the claimant has the RFC to perform the functional demands and duties of a past job as actually performed by the claimant.  *See* SSR 82-61.  If so, the claimant is not disabled.  If not, the ALJ then considers whether the claimant can perform the functional demands of the job as it is generally performed in the national economy.  SSR 82-61.  In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 C.F.R. § 404.1567.

### 1.   Failure to incorporate any upper extremity limitations into Wheaton's RFC

Wheaton first claims that the ALJ did not include any upper extremity limitations in his residual functional capacity ("RFC") assessment although both state agency medical experts, Dr. Bancks and Dr. Puestow, opined that Wheaton was limited to only occasionally reaching overhead bilaterally. R. 273, 276, 304. The Commissioner responded that the assessment of Wheaton's RFC rests with the Commissioner as the Commissioner is not bound by the medical opinions.

On July 7, 2004, Dr. Eric Puestow, a Board Certified Internal Medicine specialist and the Commissioner's medical expert, opined that Wheaton was limited to only occasional bilateral reaching overhead.  Tr. 276.  In November 2004, Dr. Nicholas Bancks, also the Commissioner's  medical expert, reviewed the record and reached the same conclusion as to Wheaton's bilateral overhead reaching limitation.  Tr. 304.  Dr. Bancks opined that Wheaton was limited to only occasional (1/3) bilateral overhead reaching.  Tr. 304.  The ALJ made findings as to grasping, holding and turning but failed to include any findings as to Wheaton's ability to reach.

While the Commissioner is correct in arguing that he is not bound by the provided medical opinions, the Commissioner is obliged to provide a full and fair record as to Wheaton's RFC.  *See*

-12-

*Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity).  The occupation of bartender (Dictionary of Occupational Titles # 312.474-010) requires frequent reaching.  If Wheaton suffers from reaching limitations, his ability to perform his past work as a bartender may be compromised.  The ALJ's failure to include a finding as to reaching in the RFC assessment requires remand for further inquiry.

### 2.  Failure to articulate good cause for rejecting treating physician's assessments

Absent the existence of "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician.  *See MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Comm'r of Social Security*,  955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).  Similarly, the ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical

or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also, Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also,* 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because those ultimate determinations are for the Commissioner. 20 C.F.R. § 404.1527(e).

The ALJ must, however, state with particularity the weight given different medical opinions and the reasons therefore and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Without the ALJ making the necessary findings, it is impossible for a reviewing court

-14-

to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).

The ALJ's decision reflects a thorough discussion regarding the weight afforded to each of the medical professionals. The ALJ explained his reasoning in not affording great weight to Dr. Ibrahim's finding that Wheaton was "totally disabled" was due to Dr. Ibrahim's failure to identify how he came to such conclusion. The ALJ determined that there was insufficient evidence in the record to make such a determination, and he found the conclusion of Dr. Ibrahim to be inconsistent with the objective medical evidence in the record. The ALJ goes further to proclaim the weight given to the Disability Determination Service physicians as they were given a thorough review of the evidence of record and were more consistent with the objective medical evidence of the record. The ALJ did not err in affording great weight to the state agency physicians' opinions.

### 3.  Factual error of concluding Wheaton's cervical spine condition was resolved following his cervical diskectomy and anterior interbody graft fusion

The ALJ concluded that Wheaton's "cervical disc disease with disc herniation . . . was successfully treated and resolved with a cervical discectomy and anterior interbody graft fusion at those levels on April 1, 2004." R. 15. However, the records indicates that Wheaton continued to suffer from ongoing cervical spine complications.

The record shows that following surgery, Wheaton continued to report cervical spine symptoms to his physicians. For instance, as of September 2004, Wheaton had decreased range of motion of the neck. R. 390. In March 2005, Wheaton was diagnosed with back and cervical pain and was prescribed Oxycodone with Acetaminophen for pain. R. 372. As of April 2005, he told Dr. Ibrahim that he was still

having shoulder pain and had chronic neck pain.  R. 329, 331.  Dr. Finnegan, in April 2005, diagnosed

Wheaton with residual neck pain and loss of motion.  R. 357.

Accordingly, there is not substantial evidence to support the ALJ's finding that Wheaton's cervical

spine condition was "resolved."  Remand is required for a further evaluation of the condition of

Wheaton's cervical spine complications.

## VI.    CONCLUSION

For the reasons stated above, the Court recommends the decision of the Commissioner be reversed

and remanded.

Failure to file written objections to the proposed findings and recommendations in this report

pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within ten days of the date of its filing shall bar

an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and

shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** on January 23, 2007, in Orlando, Florida.

*Donald P. Dietrich*

DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:


The Honorable John Antoon II
United States District Judge

Chantal J. Harrington
Bohr & Harrington, LLC
4850 Mariner Point Dr.
Jacksonville, FL                        32225

-16-

Richard A. Culbertson
Law Office of Richard A. Culbertson
Suite E
3222 Corrine Dr.
Orlando, FL                    32803

Mary Ann Sloan
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia               30303-8920

The Honorable John D. Thompson, Jr.
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Desoto Building, # 400
8880 Freedom Crossing
Jacksonville, FL               32256-1224